**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**KASPER BRANSKI,**

**Plaintiff,**

**v.** **Case No. 25-CV-1695**

**MARY ELIZABETH BRENNAN SENG, Director, Texas Service Center, U.S. Citizenship and Immigration Services, et al.,**

**Defendants.**

---

**DECISION AND ORDER ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT**

---

Kasper Branski, a citizen of Denmark, filed an I-140 Petition for Alien Worker, seeking a visa classification as an "alien of extraordinary ability" pursuant to 8 U.S.C. § 1153(b)(1)(A). On March 19, 2025, the U.S. Citizenship and Immigration Services ("USCIS") denied his petition. Branski seeks declaratory judgment, injunctive relief, and review of agency action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555 and 701, *et seq.* based on the denial of his petition. Both parties move for summary judgment in their favor. For the reasons further explained below, Branski's motion for summary judgment is denied and Defendants' motion for summary judgment is granted.

## FACTUAL BACKGROUND

Branski, a Danish national, works as a lead coachbuilder, a skilled professional who specializes in the art of crafting and assembling vehicle bodies. (Certified Administrative Record ("R.") at 2, Docket # 15-3.); *see also* https://rolecatcher.com/en/careers/craft-and-related-trades/metal-trades-workers/machinery-repairers/vehicle-repairers/coachbuilder/

(last visited Aug. 18, 2026). Branski was admitted to the United States on an O-1 nonimmigrant visa, a temporary work visa for individuals with extraordinary ability in the sciences, arts, education, business, or athletics. (R. 2.) Branski subsequently sought to adjust his status to the immigrant version of the visa—the EB-1A visa (also known as an "E11" or "extraordinary ability" visa)—a first preference employment-based visa for individuals of extraordinary ability in the sciences, arts, education, business, or athletics. (*Id.*)

USCIS utilizes a two-step process for evaluating "extraordinary ability" visa petitions. Its policy manual provides that at step one; the agency assesses whether the evidence meets the regulatory criteria as articulated in 8 C.F.R. § 204.5(h). USCIS Policy Manual, Vol. 6, Part F, Ch. 2, Sec. B. 2, *available at* https://www.uscis.gov/policy-manual/volume-6-part-f-chapter-2 (last visited Aug. 18, 2026). If the requirements are met at step one, then at step two, the agency engages in a "final merits determination" in which it considers whether the petition as a whole demonstrates that the individual "has sustained national or international acclaim and that their achievements have been recognized in the field of expertise, indicating that the person is one of that small percentage who has risen to the very top of the field of endeavor." *Id.*

Branski filed his I-140 petition with USCIS on September 9, 2022. (R. 2.) On September 20, 2022, USCIS issued a Request for Evidence, asking Branski to supply additional information in support of his petition. (R. 191–99, Docket # 15-4 at 39–47.) Branski submitted additional evidence on January 19, 2023. (R. 200–321, Docket # 15-4 at 48–150, Docket # 15-5 at 1–19.) Branski's I-140 petition was denied on February 2, 2023. (R. 175–188, Docket # 15-4 at 23–36.) In its decision, USCIS determined that Branski failed to meet

the regulatory criteria in step one of the analysis; thus, it did not reach step two's "final merits determination." (*Id.*)

Branski filed suit in federal district court challenging the denial of his petition. *See Branski v. Seng*, 24-CV-360 (E.D. Wis. Mar. 24, 2024). In a decision dated November 4, 2024, the court found that USCIS inadequately explained why Branski's submitted evidence failed to satisfy the regulatory criteria in step one of the analysis. 2024 WL 4678939, at *10. The court noted that if USCIS finds Branski satisfies at least three of the criteria found in 8 C.F.R. § 204.5(h)(3), it must then proceed to the second step of the analysis. *Id.* Thus, the court remanded the case with instructions for USCIS to reconsider whether Branski's submitted evidence meets the regulatory criteria.

USCIS reopened Branski's petition on January 8, 2025, and after reviewing the record evidence, issued a Notice of Intent to Deny. (R. 113–40, Docket # 15-3 at 111–38; R. 171, Docket # 15-4 at 19.) Branski responded to the Notice of Intent to Deny on February 7, 2025. (R. 88–109, Docket # 15-3 at 86–107.) On March 19, 2025, USCIS again denied Branski's I-140 petition. (R. 3–58, Docket # 15-3 at 1–56.) In its decision, USCIS found that Branski established the requisite regulatory criteria in step one of the analysis. (*Id.*) It concluded, however, that his petition failed at step two—the "final merits determination." (*Id.*)

The instant lawsuit followed. Branski asserts three causes of action in the present complaint. First, he challenges USCIS's decision denying his I-140 petition under the APA. (Compl. ¶¶ 35–39.) In Count Two, Branski seeks a declaratory judgment that USCIS changed its policy regarding EB-1A adjudications without engaging in the notice and comment period required by the APA. (*Id.* ¶¶ 40–46.) And third, Branski challenges the USCIS's two-step analysis for adjudicating EB-1A petitions as a whole. He alleges that the "final merits

determination" is an impermissible abrogation of Congressional authority that fundamentally altered the requirements for approval of an EB-1A petition by adding language to 8 U.S.C. § 1153(b)(1)(A). (*Id.* ¶¶ 47–52.) I will address each argument in turn.

## STANDARD OF REVIEW

Branski challenges the USCIS's denial of his EB-1A visa petition. Visa denials are subject to judicial review under the APA. *Smith v. Garland*, 103 F.4th 1244, 1252 (7th Cir. 2024). While the parties have filed cross-motions for summary judgment, "the judicial review of an agency's final determination follows standards quite different from those applied in a typical summary judgment proceeding." *J.N. Moser Trucking, Inc. v. U.S. Dep't of Lab.*, 306 F. Supp. 2d 774, 781 (N.D. Ill. 2004). Rather than considering whether there are genuine disputes of material fact, "summary judgment instead serves as a mechanism for deciding, as a matter of law, whether the agency action is . . . consistent with the APA standard of review." *Star Way Lines v. Walsh*, 596 F. Supp. 3d 1142, 1149 (N.D. Ill. 2022) (internal quotation and citation omitted).

The APA provides that a reviewing court "shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. The APA empowers the reviewing court to hold unlawful and set aside agency action, findings, and conclusions found to be, as relevant here, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right"; or "without observance of procedure required by law." *Id.* § 706(2)(A), (C), (D); *see also Paul v. Edlow*, No. 25-CV-2027, 2026 WL 1494095, at *8 (C.D. Ill. May 28, 2026) (internal quotation and citation omitted) ("Under the APA, courts set aside agency action only if it is arbitrary,

capricious, an abuse of discretion, unsupported by substantial evidence in the case, or not in accordance with the law.").

The APA's "arbitrary and capricious standard" requires that "agency action be reasonable and reasonably explained." *F.C.C. v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). Agency action is arbitrary and capricious if the agency:

> [R]elied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "Said another way, the arbitrary and capricious standard requires an agency to do its homework; decisions that overlook relevant record evidence or lack a satisfactory answer do not pass muster." *Smith*, 103 F.4th at 1252. Furthermore, judicial review is deferential; a court may not substitute its own policy judgment for that of the agency. *Prometheus Radio Project*, 592 U.S. at 423. A court simply "ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Id.*; *see also F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513–14 (2009) (stating that a court cannot "substitute its judgment for that of the agency" and should "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned"). In making these determinations, the court "shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706.

## ANALYSIS

Branski argues that USCIS's denial of an "extraordinary ability" visa was arbitrary and capricious for several reasons. First, Branski raises two distinct procedural arguments challenging the legal framework the agency applied in making its visa determination. He argues that application of the "final merits determination" contravenes both the relevant statute and regulations and that the "final merits determination" was promulgated without the notice and comment period required by the APA. And second, Branski argues that the agency's decision was arbitrary and capricious because it improperly discounted his evidence of eligibility. I will address each argument in turn but to provide context, I first explain the statutory and regulatory background of the relevant law.

### *1. Statutory and Regulatory Framework*

The Immigration Act of 1990 expanded the United States visa system by increasing the number of employment-based immigrants admitted annually to 140,000. *Viswanadha v. Mayorkas*, 660 F. Supp. 3d 759, 768 (N.D. Ind. 2023); 8 U.S.C. § 1151(d)(1)(A). If awarded, these employment-based immigrant visas give the noncitizen permanent resident status in the United States. *Id.*; 8 U.S.C. § 1151(a). The Act allocates employment-based visas based on five categories of immigrants: (1) priority workers; (2) noncitizens who are members of the professions holding advanced degrees or noncitizens of exceptional ability; (3) skilled workers, professionals, and other workers; (4) certain special immigrants; and (5) immigrants seeking to enter the United States for the purpose of engaging in a new commercial enterprise. 8 U.S.C. § 1153(b). Each of these categories receives a certain portion of the total employment-based visas allocated each year.

The first category of visa, priority workers, is called an EB-1 visa and is further subdivided into three categories: (1) noncitizens with extraordinary ability in the sciences, arts, education, business, or athletics; (2) outstanding professors and researchers; and (3) certain multinational executives and managers. 8 U.S.C. § 1153(b)(1). Priority workers visas have certain advantages compared to other categories. For example, if a noncitizen applies for an "exceptional ability" employment-based visa, he or she would need to go through a labor certification process. 8 C.F.R. § 204.5(k)(4). This process is time-consuming and requires that employers first test the marketplace for existing qualified domestic workers. *Kazarian v. U.S. Citizenship & Immigr. Servs.*, 596 F.3d 1115, 1120 (9th Cir. 2010). The "extraordinary ability" visa petition, in contrast, is not dependent on an actual offer for employment in the United States and is exempt from the labor certification process. *Id.*

A noncitizen seeking an "extraordinary ability" visa must file a I-140 petition with the USCIS. The statute describes a noncitizen as having "extraordinary ability" if:

> (i) the alien has extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation,
>
> (ii) the alien seeks to enter the United States to continue work in the area of extraordinary ability, and
>
> (iii) the alien's entry into the United States will substantially benefit prospectively the United States.

8 U.S.C. § 1153(b)(1)(A). The statute does not define "extraordinary ability"; however, § 1103 provides that the Secretary of Homeland Security can establish "such regulations . . . as he deems necessary for carrying out his authority under the provisions of this chapter." 8 U.S.C. § 1103(a)(3).

The agency sought to promulgate such implementing regulations soon after. On July 5, 1991, the agency published public notice of proposed rules and regulations regarding the visa categories created by the Immigration Act of 1990. *See* Employment-Based Immigrants, 56 Fed. Reg. 30703–30704 (July 5, 1991). In discussing these new classifications, the agency stated that the legislative history indicates that "Congress intended a higher standard for aliens of extraordinary ability by indicating that it was meant 'for that small percentage of aliens who have risen to the very top of their field of endeavor.'" *Id.* (quoting the Report of the Committee on the Judiciary for H.R. 4300).

After the requisite public comment period, on November 29, 1991, the agency adopted 8 C.F.R. § 204.5(h) to govern these employment-based visa petitions. *See* Petitions for Employment-Based Immigrants, 56 Fed. Reg. 60905 (Nov. 29, 1991). In establishing a definition of "extraordinary ability," the agency adopted the language of the statute's legislative history, defining the term as follows: "*Extraordinary ability* means a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2).

The regulations further provide that an "extraordinary ability" petition must be accompanied by "initial evidence" showing that the noncitizen has "sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise." *Id.* § 204.5(h)(3). The applicant can do so by presenting evidence of a "one-time achievement (that is, a major, international recognized award)," examples of such being a Nobel Peace Prize or Olympic Gold Medal. *See Paul*, 2026 WL 1494095, at *10; 8 CFR § 204.5(h)(3). Alternatively, the applicant can present evidence of at least three of ten enumerated criteria. *See* § 204.5(h)(3)(i)–(x).

In 1995, the agency published a proposed rule to amend the regulations on employment-based visa petitions to provide "more guidance to the public in filing employment-based immigrant petitions." *See* Employment-Based Immigrants, 60 Fed. Reg. 29772 (June 6, 1995). Specifically, as to "extraordinary ability" petitions, the agency noted that the current regulation defined "extraordinary ability" and listed evidence which needed to be presented to establish extraordinary ability. *Id.* at 29775. The agency noted confusion over the role of the categories of evidence listed in § 204.5(h)(3)(i)–(x) and sought to clarify that the fact a noncitizen met three of the listed criteria did not necessarily mean that he or she met the standard of extraordinary ability. *Id.* "The Service adjudicator must still determine whether the alien is one of that small percentage who have risen to the very top of his or her field of endeavor." *Id.* The proposed amendment, however, was never adopted.

In March 2010, the Ninth Circuit in *Kazarian*, issued a decision reviewing the denial of an "extraordinary ability" visa. In its decision, the court articulated a two-step analysis in which, at step one, the agency assesses whether the evidence meets the regulatory criteria as articulated in 8 C.F.R. § 204.5(h), and at step two, the agency determines whether the evidence demonstrates both a "level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the[ir] field of endeavor" and "that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise." 596 F.3d at 1119–20. Further, in reviewing the agency's consideration of the regulatory criteria found in § 204.5(h)(3), the court found that while the agency erred in requiring the submission of certain evidence, it stated that the evidence "might be relevant to the final merits determination of whether a petitioner is at the very top of his or her field of endeavor." *Id.* at 1121–22.

Then, on December 22, 2010, USCIS issued a policy memorandum providing guidance to USCIS officers adjudicating Form I-140 petitions. (Docket # 1-2 at 126.) Citing the recent *Kazarian* decision, USCIS stated that it "agree[d] with the *Kazarian* court's two-part adjudicative approach to evaluating evidence submitted in connection with petitions for aliens of extraordinary ability." (*Id.* at 127.) It stated that the "two-part adjudicative approach to evaluating evidence described in *Kazarian* simplifies the adjudicative process by eliminating piecemeal consideration of extraordinary ability and shifting the analysis of overall extraordinary ability to the end of the adjudicative process when a determination on the entire petition is made (the final merits determination)." (*Id.*) Courts have referred to this two-step approach as the "*Kazarian* policy" or "*Kazarian* analysis" because USCIS formally adopted this approach in response to the Ninth Circuit's decision. *Nagaiah v. Allen*, 784 F. Supp. 3d 798, 804 (E.D. Pa. 2025); *Viswanadha*, 660 F. Supp. 3d at 769.

Approximately one year later, on December 29, 2011, the Office of the Citizenship and Immigration Services Ombudsman, an office created by the Homeland Security Act of 2002 that provides independent analysis of problems encountered by individuals and employers interacting with USCIS and proposes changes to mitigate those problems, issued several recommendations regarding "extraordinary ability" visa petitions. https://www.dhs.gov/sites/default/files/publications/improve_the_quality_in_extraordinary_ability_other_eb_adjudications.pdf (last visited Aug. 18, 2026). To improve clarity and guidance, the Ombudsman recommended USCIS promulgate regulations to formally establish an objective two-part *Kazarian*-derived test as the standard by which evidence offered in support of the visa petitions must be evaluated and articulate the factors to consider when conducting a final merits determination. *Id.*

While such suggested regulations were never adopted, USCIS continues to utilize the two-step *Kazarian* analysis for reviewing I-140 "extraordinary ability" petitions.

*2. Validity of the Two-Step Analysis*

Branski challenges the legal framework USCIS uses to determine "extraordinary ability" visa applications. First, he argues the agency exceeds its statutory authority by engaging in a "final merits determination." Second, Branski asserts that USCIS contravenes its own regulations by utilizing the "final merits determination" test. And finally, Branski argues that the two-step *Kazarian* policy was adopted without the requisite statutory notice and comment period.

2.1. Consistency with 8 U.S.C. § 1153(b)(1)(A)

Branski argues that USCIS exceeded its statutory authority by implementing step two of the *Kazarian* analysis. He argues that the agency's scope of statutory inquiry is limited to whether the visa applicant has extensively documented his extraordinary ability through demonstration of sustained acclaim and recognized achievements. (Docket # 17 at 24.) While Branski acknowledges that the term "extraordinary ability" is undefined in the statute, he argues that the statutory text provides "guardrails" to ensure that only those with qualifying "extraordinary ability" fall under the statute, those "guardrails" being the need to show sustained national or international acclaim backed up by extensive documentation of the achievements. (*Id.*, citing 8 U.S.C. § 1153(b)(1)(A)(i).) Thus, in Branski's view, the statute permits the agency the authority to define only the phrases "sustained national or international acclaim," "achievements . . . recognized in the field," and "extensive documentation," which modify "terms that Congress chose to qualify the type of

extraordinary ability it was concerned about" and USCIS exceeded its authority by specifically defining "extraordinary ability" in the regulations. (*Id.* at 27.)

Administrative agencies are indeed "creatures of statute" that possess "only the authority that Congress has provided." *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*, 595 U.S. 109, 117 (2022). In determining whether an agency has acted within its statutory authority, courts must "exercise their independent judgment . . . as the APA requires." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). Courts must use the "traditional tools of statutory construction" to determine the scope of power Congress delegated to the agency through the statute. *See id.* at 401. A court begins "where all such inquiries must begin: with the language of the statute itself." *Republic of Sudan v. Harrison*, 587 U.S. 1, 8 (2019) (internal quotation and citation omitted). A "fundamental canon of statutory construction" is that the words "generally should be interpreted as taking their ordinary, contemporary, common meaning . . . at the time Congress enacted the statute." *Wisconsin Cent. Ltd v. United States*, 585 U.S. 274, 284 (2018).

The statutory text indicates that a noncitizen must have "extraordinary ability" in the sciences, arts, education, business, or athletics "which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation." 8 U.S.C. § 1153(b)(1)(A). The statutory language includes no further criteria elaborating what "extensive documentation" must be provided to demonstrate recognized achievements or national or international acclaim. In other words, none of the terms vital to the statute are spelled out within the statutory text. Rather, Congress authorized the agency to adopt regulations deemed necessary to carry out the agency's authority, *see* 8 U.S.C. § 1103(a)(3), and the agency did so in 8 C.F.R. § 204.5(h). It is in the

regulations that the types of evidence the visa applicant must provide are articulated. While Branski acknowledges that none of these terms—"extraordinary ability," "sustained national or international acclaim," "achievements . . . recognized in the field," and "extensive documentation"—are defined in the statute, he argues that only "extraordinary ability" was off-limits for the agency to define.

But there is no indication that USCIS was prohibited from defining this term. Branski seemingly argues that the agency lacked the authority to define "extraordinary ability" because Congress has already effectively defined the term in the statute through the "guardrails" of "sustained acclaim" and "recognized achievements." At the same time, however, Branski acknowledges that the term "extraordinary ability" is not, in fact, defined by the statute. (Docket # 17 at 24.) It makes little sense that Congress would permit the agency to define several terms found in § 1153(b)(1)(A) but prohibit it from defining arguably the most essential term of the statute—extraordinary ability—when the statute left it undefined. Rather, it seems more likely that USCIS was acting within its statutory authority, granted by Congress in 8 U.S.C. § 1103(a)(3), to "fill up the details" of the statutory scheme. *See Loper Bright*, 603 U.S. at 395; *Taneja v. Miller*, No. 24-CV-05657, 2026 WL 1734266, at *6 (E.D.N.Y. June 16, 2026) ("It does not follow that with no explicit restriction in 8 U.S.C. § 1153(b)(1)(A), the power granted by 8 U.S.C. § 1103(a)(3) would not allow USCIS to fill up the details of [this] statutory scheme and define an essential term.").

Furthermore, the agency's definition of "extraordinary ability" comports with the ordinary meaning of the terms. A word's "ordinary, contemporary, common meaning" is frequently found "by looking at what [it] meant when the statute was enacted, often by referencing contemporary dictionaries." *United States v. Melvin*, 948 F.3d 848, 852 (7th Cir.

2020). Considering the dictionary definitions available in 1990 when Congress passed the law creating this visa category, the Oxford English Dictionary defined "extraordinary" as "Of a kind not usually met with; exceptional; unusual; singular." Extraordinary (def. 3), *Oxford English Dictionary* (2d ed. 1989). And it defined "ability" as "mental power or capacity; talent, cleverness." Ability (def. 5), *Oxford English Dictionary* (2d ed. 1989). The Supreme Court has called the Oxford English Dictionary "one of the most authoritative on the English language." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 569 (2012). Thus, these dictionary definitions support that the ordinary meaning of "extraordinary ability" is one who has exceptional, unusual, or singular mental power, capacity, talent, or cleverness in the stated fields.

In other words, the regulation's definition tracks the ordinary meaning of the terms, defining "extraordinary ability" as "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2). As the Fifth Circuit found, this regulatory definition is "consistent with the best meaning of the statute." *Joseph v. Dir. of Texas Serv. Ctr., United States Citizenship & Immigr. Servs.*, No. 24-40249, 2025 WL 458001, at *1 n.2 (5th Cir. Feb. 11, 2025).

The regulation's definition also comports with the structure of the statute as a whole. As stated above, § 1153(b) contains several categories of employment-based immigrant visas. Noncitizens of "extraordinary ability" are "priority workers" and have first preference. *Kazarian*, 596 F.3d at 1120; 8 U.S.C. § 1153(b)(1). The following category, noncitizens who are members of the professions holding advanced degrees or noncitizens of exceptional ability, need make a "lesser showing of ability." *Kazarian*, 596 F.3d at 1120; 8 U.S.C. § 1153(b)(2). These two categories are then followed by a third subsection, § 1153(b)(3), that addresses skilled workers, professionals, and other workers who have third preference.

*Kazarian*, 596 F.3d at 1120 n.1; 8 U.S.C. § 1153(b)(3). These categories with decreasingly stringent requirements support that those seeking an "extraordinary ability" visa must meet a more exacting standard. *See Joseph*, 2025 WL 458001, at *1.

Thus, Branski has not shown that USCIS exceeded its statutory authority by engaging in the step two, "final merits determination" analysis. Summary judgment is granted in favor of the defendants on this claim.

### 2.2 Consistency with 8 C.F.R. § 204.5(h)

Branski further argues that the agency's "final merits determination" contravenes the controlling regulations. Branski argues that considering the text, structure, history, and purpose of the regulation, 8 C.F.R. § 204.5(h) "clearly and unambiguously requires nothing more than a showing that a particular noncitizen meets the criteria of 8 C.F.R. § 204.5(h)(3) to demonstrate their possession of extraordinary ability." (Docket # 17 at 22.) Thus, he argues that the agency's "final merits determination" test is *ultra vires* and unlawful. (*Id.*)

Section 204.05(h)(3) provides as follows:

> ***Initial evidence.*** A petition for an alien of extraordinary ability must be accompanied by evidence that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise. Such evidence shall include evidence of a one-time achievement (that is, a major, international recognized award), or at least three of the following:
>
> > (i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;
> >
> > (ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;
> >
> > (iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the

> field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;
>
> (iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;
>
> (v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;
>
> (vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;
>
> (vii) Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;
>
> (viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;
>
> (ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or
>
> (x) Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

Section 706 of the APA provides for judicial review of agency action, including determining the meaning or applicability of the terms of a regulation. *See Kisor v. Wilkie*, 588 U.S. 558, 580–81 (2019). In so doing, a court must first carefully consider the text, structure, history, and purpose of a regulation to determine its meaning. *Id.* at 575. If "uncertainty does not exist," then the regulation "just means what it means—and the court must give it effect, as the court would any law." *Id.* at 574–75. If, however, after exhausting "all the 'traditional tools' of construction," a court concludes that a regulation is genuinely ambiguous, then the "general rule" is to defer to the agency's interpretation of its own ambiguous rule, a principle known as "*Auer* deference" after the Court's decision in *Auer v. Robbins*, 519 U.S. 452 (1997). *Id.* at 573, 575.

Branski's assertion that meeting the criteria of § 204.5(h)(3) is sufficient to obtain an "extraordinary ability" visa contravenes the plain language of the regulation. Section 204.5(h)(2) first defines "extraordinary ability" and then instructs applicants on the "initial evidence" that must accompany the petition, § 204.5(h)(3). The regulation explains that "such evidence" shall include a "one-time achievement" or at least three of ten possible criteria. *Id.* Branski argues that the use of the phrase "such evidence" sets out an evidentiary requirement that constitutes a "complete rule setting a complete standard." (Docket # 17 at 20–21.)

Branski, however, ignores the word "initial" in the title of § 204.5(h)(3)—"Initial evidence." The term "initial" contemplates that some further showing is required. *See Viswanadha*, 660 F. Supp. 3d at 771 (finding that the "word choice in this subsection indicates that the regulation was merely setting forth a necessary condition, rather than a sufficient condition"). As one court reasoned, if § 204.5(h)(3) "set a complete standard to evaluate visa petitions, the label of 'initial evidence' would make no sense." *Nagaiah*, 784 F. Supp. 3d at 814. Rather, § 204.5(h)(3) establishes "a necessary, not sufficient, evidentiary requirement for a petitioner who seeks an extraordinary-ability visa." *Id.*; *see also Taneja v. Miller*, No. 24-CV-05657, 2026 WL 1734266, at *6 (E.D.N.Y. June 16, 2026) (finding that the "plain meaning of 'initial' precludes a presumption of approval by an applicant simply providing such evidence they believes to fit the criteria"). As the Fifth Circuit explained:

> The regulation does not say that meeting the regulatory criteria presumptively qualifies an applicant for a visa. It addresses what evidence must "accompany[]" a petition. 8 C.F.R. § 204.5(h)(3). As most college applicants learn, submitting all the required application materials does not guarantee a favorable decision. What is more, the regulation labels the categories "*Initial* evidence" and states that applicants must submit evidence of "*at least* three" criteria. *Id.* (emphasis added). This word choice contemplates another step beyond submitting the enumerated evidence: if satisfying three criteria were enough, why would the agency invite proof of more? As we read it, the regulation's "initial evidence" provision provides color to the statute's

> "extensive documentation" requirement. *See* 8 U.S.C. § 1153(b)(1)(A). And the final merits determination speaks to the statute's requirement of "extraordinary ability which has been demonstrated by sustained national or international acclaim." *Id.*

*Amin v. Mayorkas*, 24 F.4th 383, 391–92 (5th Cir. 2022). Branski argues that *Amin* has limited value because it was decided prior to the Supreme Court's decision in *Loper Bright*. (Docket # 20 at 7.) In *Loper Bright*, the Court overruled the long-standing policy articulated in *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984) of judicial deference to an agency's interpretation of an ambiguous statute. 603 U.S. at 412–13. *Chevron*, however, does not come into play here because the issue in *Amin* was agency interpretation of a regulation, not a statute. This invokes *Auer* deference, not *Chevron*. And the Supreme Court reaffirmed *Auer* deference in *Kisor* as recently as 2019. As the Seventh Circuit stated, "the Supreme Court in *Loper Bright* did not purport to overrule or even modify *Auer* . . . nor to explain the effect of the decision (if any) on *Kisor*. And we follow the Court's instruction to resist finding its decisions overruled by implication." *United States v. Poore*, No. 22-3154, 2025 WL 1201946, at *3 (7th Cir. Apr. 25, 2025).

Even so, as with *Chevron*, *Auer* deference is relevant only to an ambiguous regulation. In *Amin*, the Fifth Circuit specifically stated that it was not deferring to agency interpretation when analyzing the agency's two-step approach. 24 F.4th at 392 n.6. Thus, *Loper Bright* does not diminish *Amin*'s persuasive value.

Branski further argues that the regulation's inclusion of possible "comparable evidence" if the ten enumerated criteria "do not readily apply to the beneficiary's occupation," 8 C.F.R. § 204.5(h)(4), "leads to the negative inference that the regulation has no other requirements regarding the type of proof that a noncitizen must submit to demonstrate their possession of extraordinary ability" (Docket # 17 at 22). I disagree. This

subsection simply provides for alternative "initial evidence" for occupations where the regulatory criteria do not readily apply. It is still an initial step that is necessary, but not sufficient, to obtain the visa. For these reasons, Branski fails to demonstrate that the regulations do not authorize the agency's "final merits determination." Thus, summary judgment is granted in favor of Defendants.

2.3 Notice and Comment Period

Branski further argues that by adopting the "final merits determination" test in its 2010 Policy Memorandum, the agency promulgated a substantive, legislative rule without following the notice and comment rulemaking procedure required by the APA. (Docket # 17 at 28–29.) Branski contends that because the statute requires this process and the agency failed to perform it, the *Kazarian* analysis is invalid.

Section 553 provides that "an agency must publish notice of a proposed rulemaking in the Federal Register and afford 'interested persons an opportunity to participate . . . through submission of written data, views, or arguments.'" *Lincoln v. Vigil*, 508 U.S. 182, 195 (1993) (quoting 5 U.S.C. §§ 553(b), (c)). "There are exceptions, of course," as § 553 applies only to "so-called 'legislative' or 'substantive' rules; they do not apply to 'interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice.'" *Id.* at 196 (quoting 5 U.S.C. § 553(b)). Generally speaking, "substantive" or "legislative" rules are those "which create law, usually implementary to an existing law." *Alabama Tissue Ctr. of Univ. of Alabama Health Serv. Found., P.C. v. Sullivan*, 975 F.2d 373, 377 (7th Cir. 1992) (internal citations omitted); *see also Metro. Sch. Dist. of Wayne Twp., Marion Cnty., Ind. v. Davila*, 969 F.2d 485, 489 (7th Cir. 1992) ("[I]f by its action the agency intends to create new law, rights, or duties, the rule is properly considered to be a legislative rule.") (internal citation omitted). By

contrast, "interpretative" rules are "statements as to what the administrative officer thinks the statute or regulation means." *Sullivan*, 975 F.2d at 377. Further, while the "agency's characterization is not dispositive," it is a "relevant factor" in determining whether a rule is substantive or interpretative. *Davila*, 969 F.2d at 489.

Branski argues that the "final merits determination" test adopted in the 2010 Policy Memorandum served to promulgate a substantive, legislative rule. (Docket # 17 at 28.) He further argues that this rule altered the agency's test for all future adjudications and conflicted with its prior test. (*Id.* at 29–30.) In support, he points to the agency's 1995 proposed rule to amend the regulations to provide more guidance on employment-based immigrant petitions, specifically by clarifying that for "extraordinary ability" petitions, meeting three of the ten regulatory criteria was not dispositive of whether one met the standard of extraordinary ability. 60 Fed. Reg. at 29775. Branski argues that the agency invoked the APA's notice and comment procedure for this 1995 proposal and the Ombudsman labeled it as a substantive rule. (Docket # 17 at 28–29.) He reasons that the agency's 1995 proposal sought to do what the 2010 Policy Memorandum effectuated, indicating that the "final merits determination" test carries the features of a legislative rule under the APA. (*Id.*) He further argues that the Ombudsman stated that the 2010 Policy Memorandum was a change in the agency's historical and long held reading of the regulations. (*Id.* at 29–30.)

Once again, while the agency's characterization of the rule is not dispositive, it remains relevant and is the "starting point" of the analysis. *Davila*, 969 F.2d at 489. As an initial matter, to the extent Branski relies on the Ombudsman's characterizations of the Policy Memorandum, the Ombudsman is independent of USCIS and thus does not consist of the agency's own characterization of the rule. Rather, USCIS describes the "use" of the Policy

Memorandum as "intended solely for the guidance of USCIS personnel in the performance of their official duties" and that it is "not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law." (Docket # 17-2 at 18.)

Further, the plain language of the Policy Memorandum does not indicate that the agency intended to create new law, rights, or duties. The Policy Memorandum states that its purpose is to promote consistency in decision-making through utilization of the two-part *Kazarian* test. (*Id.* at 4.) It explains that under *Kazarian*, the adjudicator must determine whether the petitioner provided evidence to satisfy the requisite number of evidentiary criteria under 8 C.F.R. § 204.5 and then consider all of the evidence, cumulatively, to see if it "proves by a preponderance of the evidence that the applicant or beneficiary is at the very top of his or her field of endeavor." (*Id.* at 4–5.) In other words, the agency is not adding any new legal requirements to the evaluation of "extraordinary ability" visa applications—as articulated above, the agency did not create an *ultra vires* requirement when implementing the two-step *Kazarian* test. Thus, the Policy Memorandum both states what the agency thinks the statute means and clarifies how the agency adjudicators are to evaluate the evidence. These are characteristics of an interpretative rule. *See Viswanadha*, 660 F. Supp. 3d at 773. This finding is consistent with that of multiple other courts who have concluded that the Policy Memorandum is interpretative, not substantive. *See, e.g.*, *Amin*, 24 F.4th at 392 (finding that the Policy Memo "is valid without notice and comment" as it "merely clarifies the order in which agency adjudicators evaluate the evidence"); *Viswanadha*, 660 F. Supp. 3d at 773 (finding the *Kazarian* rule to be interpretive in nature and does not alter any substantive rights); *Impossible Foods Inc. v. Jaddou*, No. 23-CV-02720, 2024 WL 235187, at *6 (N.D. Cal. Jan. 22,

2024) (finding *Kazarian* policy did not constitute a legislative rule under the APA); *Etsy, Inc. v. Jaddou*, No. 4:22CV3022, 2023 WL 3689555, at *22 (D. Neb. May 25, 2023) (finding the *Kazarian* policy to be "interpretative" as a matter of law). Because the Policy Memorandum is not a substantive or legislative rule, it is not subject to the APA's notice and comment period. Thus, summary judgment is granted in favor of Defendants on this claim.[1]

*3. Application to Branski's Visa Petition*

Finally, Branski appears to raise a claim that the agency erred in assessing his specific visa application, alleging that USCIS ignored, discounted, or undervalued competent evidence found in the agency record. (Compl., Count I.) However, in his opening brief in support of his summary judgment motion, Branski makes no arguments as to how the agency erred in evaluating his specific application. (Docket # 17.) Defendants assert that because Branski does not argue why USCIS's decision was unlawful, the argument is waived. (Docket # 18-1 at 30.) Alternatively, Defendants argue that USCIS's decision denying Branski's visa petition was not arbitrary and capricious. (*Id.* at 30–34.)

I agree Branski has waived this argument. Once again, in addition to Branski putting forth no argument as to how USCIS erred in denying his visa petition, Branski fails to respond to Defendants' substantive arguments as to why USCIS did not err, or to Defendants' waiver argument. (Docket # 20.) Rather, Branski provides a single paragraph making the conclusory assertion that the denial of his visa petition was arbitrary and capricious because Defendants "improperly discounted his evidence of his eligibility under the agency's Step 1 criteria and

[1] Defendants further argue that Branski's alleged procedural defect is barred by the 6-year statute of limitations found in 28 U.S.C. § 2401(a). (Docket # 18-1 at 34–36.) Because Branski's claim fails on the merits, I need not address this statute of limitations argument.

under the agency's Step 2 final merits analysis, and that Defendant USCIS improperly raised the burden of proof above the preponderance of the evidence." (Docket # 20 at 12.)[2]

The Seventh Circuit makes clear that it is not the responsbility of the court "to research and construct the parties' arguments." *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011) (internal quotation and citation omitted). And "[p]erfunctory and undeveloped arguments are waived." *Schaefer v. Universal Scaffolding & Equip.*, LLC, 839 F.3d 599, 607 (7th Cir. 2016). "On motions for summary judgment in a case brought under the APA, the party seeking judicial review bears the burden of proving that USCIS's decision was arbitrary or capricious." *Timov v. Riddle*, 742 F. Supp. 3d 802, 810 (N.D. Ill. 2024). By offering no argument in support of his position, Branski has failed to meet his burden in this case. Thus, summary judgment is entered in favor of Defendants.

## CONCLUSION

In creating the "extraordinary ability" visa, Congress hoped to "draw the world's best and brightest to American shores" by giving "preferential treatment to highly talented immigrants." *Amin*, 24 F.4th at 386. These visas, while highly sought after, are the "most difficult type of employment visa to obtain." *Joseph*, 2025 WL 458001, at *1. Recipients of the "extraordinary ability" visa include such internationally-known individuals as John Lennon.

---

[2] The remainder of Branski's brief makes little sense in the context of this case. By way of example, Branski makes multiple arguments as to how his complaint plausibly states APA claims and thus is sufficient under Fed. R. Civ. P. 12(b)(6). (Docket # 20 at 12–25.) No motion to dismiss under Rule 12(b)(6) has ever been filed in this case. Branski makes further statements as if he were addressing the District of Nebraska court. (*See id.* at 20, stating "More significantly, this Court considered the same authorities and the same legal question, at length, with the benefit of full briefing, in *Mukherji v. Miller*, No. 4:24CV3170, 2026 WL 895708 (D. Neb. Jan. 28, 2026).) Finally, he states that USCIS conceded that Branski satisfied four of the regulatory criteria (*id.* at 18) when he has only satisfied three. I can only imagine that the remainder of Branski's brief represents a poor cut-and-paste job from another of counsel's cases. While attorneys need not reinvent the wheel, it is expected that counsel proofread a brief submitted to the court and tailor the brief to the facts and law at issue in the specific case before the court.

*Id.* While the bar to receive such a visa is "lofty," *see Amin*, 24 F.4th at 386, this restrictive classification is intentional, by statutory design.

Both Branski and Defendants move for summary judgment in their favor. Branski challenges USCIS's procedure for adjudicating "extraordinary ability" visas, arguing that the agency's "final merits determination" analysis contravenes the relevant law and was promulgated without proper statutory notice. For the reasons explained above, Branski's arguments fail. While Branski further alleged that USCIS's decision denying his visa petition was arbitrary and capricious, by failing to set forth any arguments in support of his claim, it is waived. Thus, summary judgment is granted in favor of Defendants and against Branski. The case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (Docket # 16) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Docket #18) is **GRANTED**.

**FINALLY, IT IS ORDERED** that this case is dismissed. The clerk of court will enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 19th day of August, 2026.

BY THE COURT:

NANCY JOSEPH
United States Magistrate Judge